UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK NELSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-00994 JAR |
| | ) | |
| STAN PAYNE, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM AND ORDER

Petitioner Patrick Nelson ("Nelson") filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 raising fifteen claims for relief. (Doc. No. 1). Thereafter Nelson filed a First Amended Petition for a Writ of Habeas Corpus. (Doc. No. 17). The State responded (Doc. No. 22), and Nelson filed a traverse (Doc. No. 29). The matter is therefore fully briefed and ready for disposition. For the following reasons, Nelson's petition is **DENIED** and this action is **DISMISSED**.

I.      Background

On February 22, 2011, Nelson was charged in the Circuit Court of St. Louis County, Missouri, with one count of Murder in the First Degree in violation of § 565.020 RS Mo. (2000), one count of Assault in the First Degree in violation of § 565.050 RS Mo. (2000), one count of Burglary in the First Degree in violation of § 565.050 RS Mo. (2000), and three counts of Armed Criminal Action in violation of § 571.015 RS Mo. (2000). The case proceeded to trial on July 29, 2013.

On August 2, 2013, Nelson was found guilty as charged by the jury. He was sentenced on September 6, 2013 as a prior and persistent offender to life without parole on the murder

1

conviction, and 30 years on each of the remaining five convictions, with the 30-year sentence on

the first armed criminal action conviction to be served consecutively to the murder conviction

life sentence, and the remaining 30-year sentences to be served concurrently to one another and

to the consecutive 30-year sentence. His conviction and sentence was affirmed on direct appeal.

State v. Nelson, 459 S.W.3d 917 (Mo. Ct. App. 2015).

In its order affirming Nelson's conviction on direct appeal, the Missouri Court of Appeals

described the underlying facts as follows:

> On the evening of February 19, 2011, Twana Fisher (Fisher) and her boyfriend of
> 14 years, Carlos Neil (Neil), were at Fisher's residence in Overland where they
> both resided with Fisher's son, Derrick. Fisher was sitting in her bedroom
> speaking on the telephone with her friend Tajon Telfair (Telfair). Neil was sitting
> on the edge of the bed watching television and drinking a beer. The bedroom is in
> the back of the house near the back door. There was a knock on the back door.
> Neil got up to answer it. Fisher heard Neil say, "No, Pat, I'm going to get your
> money," and then heard two gunshots.
>
> Fisher grabbed a knife she kept by the side of her bed, exited her bedroom, and
> saw Appellant standing in her living room. Appellant's back was to Fisher. He
> was wearing a black hooded sweatshirt and dark pants. Fisher ran at Appellant
> and attempted to stab him with the knife but Appellant hit her in the face and shot
> her in the shoulder. Fisher fell to the floor. Neil then came out of Derrick's
> bedroom and said to Appellant, "Patrick, don't do this, Pat, why are you doing
> this, Patrick, don't do this, Fat Pat!" Appellant then shot Neil in the chest. Neil
> fell to the floor and Appellant put the gun to Neil's head, shot him, and left.
>
> Fisher called 911 at 9:44 p.m. Police Officers Jeffrey Conrey and Codi Graham
> responded to the scene, where they found Neil dead on the floor just inside the
> front door. Neil's autopsy later revealed that he suffered four gunshot wounds,
> and the cause of death was gunshot wounds to the chest, abdomen, and head.
> Officer Conrey said when he arrived at the scene Fisher was screaming on her cell
> phone and appeared to be in shock. Officer Graham testified Fisher had muscle
> protruding from the gunshot in her shoulder and appeared to be in shock. Officer
> Graham also testified Fisher was "hysterical, emotional, [and] upset" and was
> "yelling, screaming, [and] crying" that "Fat Pat killed him!" and "Patrick killed
> my Carlos!"
>
> Police searched their database for individuals known as "Fat Pat," revealing three
> people with this moniker. From a photographic lineup, both Fisher and Telfair
> identified Appellant as "Fat Pat." On the morning of February 20, 2011, police

found Appellant at his girlfriend Anita Payne's (Payne) house. Payne consented orally and in writing to a search of her house, where police seized Appellant's jeans, hooded sweatshirt and a gun wrapped in a red rag on top of a dresser in Payne's bedroom where Appellant was sleeping. After Appellant confirmed his identity, police arrested him.

Three .25-caliber bullets were recovered from Neil's body. Four .25-caliber bullets and seven shell casings were recovered from the crime scene. All of the bullets except for one recovered from Fisher's house had six lands and grooves with a left-hand twist, and were determined by a firearms expert to have been fired by the gun recovered from the top of the dresser in Payne's bedroom, where Appellant had been sleeping when police found him.

Appellant was charged with Count I, first-degree murder of Neil; Count II, armed criminal action based upon Count I; Count III, first-degree assault of Fisher; Count IV, armed criminal action based upon Count III; Count V, first-degree burglary by knowingly entering unlawfully Fisher's residence for the purpose of committing assault; and Count VI, armed criminal action based upon Count V.

At trial, Telfair testified that when she was talking to Fisher on the telephone the evening of February 19, 2011, through the telephone she had heard Neil say, "Why are you doing this, Pat, Fat Pat, why are you doing this, I got your money, I got some money."

Appellant's cousin Damon Yokley (Yokley) testified Appellant was known as "Fat Pat," and that Appellant and Neil knew each other. Yokley testified that earlier in the evening of February 19, 2011, from about 7:00 to 8:00 p.m., Appellant and Payne were having barbeque at Yokley's house in Breckenridge, which is near Overland. Neil was working on Yokley's truck at the time at an auto shop on Woodson Road. Yokley decided to go check on the status of his truck at the auto shop, and Appellant and Payne accompanied him. They walked to the shop, which was about three minutes away. Yokley testified that on their way there, Appellant had told him he was going to "f**k [Neil] up." After they arrived at the shop, Yokley testified he heard Appellant ask Neil about money, and heard Neil tell Appellant that he would get him his money later. Yokley thought the money dispute was about a motor. Yokley stayed at Neil's shop for about 15 to 30 minutes, while Appellant and Payne left. Neil finished working on Yokley's truck, so Yokley went home to get money to pay Neil and to take barbeque off his grill. Neil followed Yokley to Yokley's house, leaving after he was paid. Later that evening at 9:22 p.m., Yokley said Appellant called him and asked where Neil was. Yokley told Appellant he did not know but Neil was probably at home.

William George (George), the retired supervisor of the St. Louis County Police Department crime lab, firearms identification section, testified for the State regarding the gun seized from Payne's house and the trajectories recovered from the crime scene and from Neil's body during his autopsy. George examined the

3

gun, a clip, the three bullets from Neil's body, the four bullets from the crime scene, and the seven shell casings from the crime scene. George test-fired the gun, which generated four bullets and four shell casings. George compared the test-fired bullets to the three bullets recovered from Neil's body and concluded the gun had fired the bullets recovered from Neil's body. George also compared the four crime scene bullets to his test-fired bullets, and testified three of the four crime scene bullets were fired from the gun but the comparison of the fourth one yielded inconclusive results.

(Doc. No. 16-8 at 2-5).

Nelson subsequently filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. The circuit court denied Nelson's motion without an evidentiary hearing. Nelson v. State, No. 15SL-CC02629, 2016 WL 8416877 (Mo. Cir. Mar. 18, 2016). The Missouri Court of Appeals affirmed the denial. Nelson v. State, 527 S.W.3d 854 (Mo. Ct. App. 2017).

Nelson is currently incarcerated at Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. In his original pro se § 2254 Petition, Nelson raises fifteen grounds for relief based on alleged trial court errors and ineffective assistance of counsel:

(1) The trial court erred when it admitted ballistics evidence when there was no foundation testimony that ballistics evidence is scientifically reliable (Doc. No. 1 at 17);

(2) The trial court erred when it did not allow him to introduce evidence about the effect of alcohol and illicit drug use on the ability of Neil and Fisher to witness the events on the night of the murder (id. at 17-18);

(3) The trial court erred by overruling his objection to the State's use of a taped interview of his former girlfriend and alibi witness (id. at 18-19);

(4) Nelson's rights under the Confrontation Clause were violated by the admission of hearsay evidence, specifically statements from Fisher and Telfair identifying him when he came to the door (id. at 19-20);

(5) Nelson's rights under the Confrontation Clause were violated by the admission of a hearsay statement, specifically Fisher's statement that Nelson and the Victim had a conversation about a financial controversy (id. at 20);

4

(6) The trial court erred by limiting Nelson's cross-examination of Fisher about the financial controversy (id. at 21);

(7) Nelson's rights under the Confrontation Clause were violated by the trial court's admission of hearsay testimony, specifically Yokley's testimony that he heard the Victim owed Nelson money for something (id. at 22);

(8) There was insufficient evidence for the jury to find Nelson guilty of first-degree burglary (id. at 22-23);

(9) The conviction for one of the counts of armed criminal action also lacked sufficient evidence of the underlying felony of first-degree burglary (id. at 24);

(10) Nelson's Fourth Amendment rights were violated by the unlawful seizure of his gun and   clothing and the admission into evidence (id. at 25);

(11) The trial court erred in admitting the gun into evidence and allowing testimony about the gun because the State failed to establish a chain-of-custody (id.);

(12) Trial counsel was ineffective for failing to argue that the police obtaining real-time cell site location information (CSLI) violated the Fourth Amendment (id. at 26-27);

(13) Trial counsel was ineffective for failing to cross-examine Anita Payne about the police obtaining consent to search through deception and intimidation (id. at 28);

(14) Trial counsel was ineffective for failing to request an alibi instruction (id. at 29-30); and

(15) Appellate counsel was ineffective for failing to brief a claim that the trial court erred by allowing the firearms expert to testify about his conclusion that Nelson's gun was the gun that shot the victims (id. at 31).

In his amended § 2254 petition, Petitioner presents additional analysis on Claims 2 and 12, and raises a new claim (Claim 16) of ineffective assistance of counsel for advising Petitioner's alibi witness to speak to the prosecution alone, failing to adequately prepare her for cross-examination, and failing to present evidence that she had come forward as an alibi witness shortly after counsel was assigned to the case, and had not waited for a year and a half, as the State argued. (Doc. No. 17 at 2-3).

5

## II.     Standard of review

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is contrary to … clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision … and nevertheless arrives at a [different] result." Cagle v. Norris, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)). A State court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407 (2000). A State court decision may be considered an unreasonable

determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." Ryan v. Clarke, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A State court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that State court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

### III.    Ineffective assistance of counsel

Several of Nelson's grounds raise ineffective assistance of counsel claims. To prevail on an ineffective assistance of counsel claim, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. Anderson v. United States, 393 F.3d 749, 753 (8th Cir.), *cert. denied,* 546 U.S. 882 (2005); Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To establish the deficient performance prong of the Strickland test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690). Courts also seek to "eliminate the distorting

7

effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).

To establish the prejudice prong of the Strickland test, one must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Anderson, 393 F.3d at 753-54 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." Id. at 695; Williams v. United States, 452 F.3d 1009, 1012–13 (8th Cir. 2006).

A court need not even determine whether a movant meets the "performance" prong of the Strickland test because both the United States Supreme Court and the Eighth Circuit Court of Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998 ); see also Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

Federal habeas review of an ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111 (2009); Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012). First, a petitioner must overcome the high bar of Strickland by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, 131

S. Ct. 770, 788 (2011). As discussed below, Nelson has failed to make this showing for any of his ineffective assistance of counsel claims.

## IV.    Procedural default

Many of Nelson's grounds are procedurally defaulted. "Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 566 U.S. 1, 9 (2012). Under the doctrine of procedural default, a federal habeas court may not review claims where "the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); see also Wainwright v. Sykes, 433 U.S. 72 (1977).

Subject to a few narrow exceptions, the procedural default doctrine prohibits federal courts from considering defaulted claims. For example, "a prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750). Cause is shown if the petitioner demonstrates that an objective factor, external to his defense, impeded his ability to comply with the procedural requirement. Coleman, 501 U.S. at 750. Prejudice in this context requires the petitioner to show that the alleged errors "worked to his actual and substantial disadvantage." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (emphasis in original); see also Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012). Here, the standard of prejudice "is higher than that required to establish ineffective assistance of counsel under Strickland." Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995).

A procedural default may also be excused if a petitioner can show that a fundamental miscarriage of justice would otherwise occur. For example, if a petitioner can demonstrate that

he is actually innocent, a federal court may excuse his procedural default. Schlup v. Delo, 513 U.S. 298, 324 (1995). Actual innocence is established by presenting new and reliable evidence.

Under Martinez, alleged attorney errors in initial-review collateral proceedings may sometimes qualify as cause for procedurally defaulted ineffective assistance of trial counsel claims. 566 U.S. at 14. For ineffective assistance of PCR counsel to excuse a procedural default, the petitioner must demonstrate that the underlying ineffective assistance of counsel claim is "substantial," meaning that it has "some merit." Id.

In the Eighth Circuit, "[a] federal court is allowed to find 'cause,' thereby excusing a habeas petitioner's procedural default ... where (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" Dansby v. Hobbs, 766 F.3d 809, 834 (8th Cir. 2014) (citing Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013)). If Nelson can demonstrate all three of these requirements, then he has demonstrated cause excusing the procedural default of his ineffective assistance of trial counsel claims. As discussed below, Nelson has not met this standard for any of his procedurally defaulted grounds.

## V.    Discussion

### A.  Grounds alleging trial court error

### Ground 1

In Ground 1 of his petition, Petitioner alleges the trial court erred when it admitted ballistics evidence without foundation testimony that such evidence is scientifically reliable. This ground involves a non-cognizable issue of state evidentiary law. See 28 U.S.C. § 2254(a) (noting

10

that federal habeas relief is available to state prisoners only to correct violations of (1) the United States Constitution; (2) federal laws; or (3) treaties of the United States). Apart from exceptions such as the Confrontation Clause, state evidentiary issues only assume constitutional significance where the introduction or exclusion of evidence is so extremely unfair that its admission violates "fundamental conceptions of justice." See Dowling v. United States, 493 U.S. 342 (1990). The Supreme Court has defined this class of evidentiary issues "very narrowly." Id. The Eighth Circuit has further opined that, to constitute a due process violation, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995).

The trial court's admission of the ballistic evidence in this case does not rise to that level of egregiousness, and it did not fatally infect the proceedings or render the entire trial fundamentally unfair. The Missouri Court of Appeals considered this claim on direct appeal and rejected it on the merits. In disposing of this issue, the appellate court found that the method used to identify the bullets as coming from the gun seized from Nelson was identical to the method approved by the Missouri Supreme Court in State v. Shawley, 67 S.W.2d 74, 80 (Mo. 1933), and used and accepted by Missouri courts "countless times since," and that the State's witness, William George, was clearly qualified to render his expert opinion based on this methodology. (Doc. No. 16-8 at 8). The appellate court held that because the methodology of the State's expert is generally accepted in the scientific community, the trial court's failure to hold a Frye hearing was not reversible error and the admission of the State's expert's testimony was not an abuse of discretion. (Id. at 9).

The explanation given by the Missouri Court of Appeals is entitled to deference and does not incorrectly or unreasonably apply federal constitutional law. Nelson is not entitled to relief

on this ground because it concerns a non-cognizable issue of state evidentiary law, and to the extent that it even implicates the Due Process Clause, the state courts adjudicated it in a manner consistent with 28 U.S.C. § 2254(d). Ground 1 is, therefore, denied.

**Ground 2**

In Ground 2 of his original § 2254 petition, Nelson alleges the trial court erred when it did not allow him to introduce expert testimony and evidence about the effect of alcohol and illicit drug use on the ability of Neil and Fisher to witness the events on the night of the murder, and specifically to identify him as the shooter. In his amended petition, Nelson asserts a variation of this claim, i.e., that his trial counsel was ineffective for failing to make an offer of proof on the proffered expert.

The Missouri Court of Appeals declined to address the merits of Nelson's claim of trial court error on direct appeal because he failed to make an offer of proof as to his proffered expert's testimony, thereby failing to preserve the issue for appellate review. (Doc. No. 16-8 at 9). Alternatively, the appellate court held there was no substantial factual basis in the record to support the admission of testimony from an unidentified expert witness who had not personally examined Neil or Fisher as to the general effects of the drugs in their systems on their general perceptions of the events on the day in question. (Id. at 10). The appellate court further held that Nelson was not prejudiced by the trial court's refusal to allow the expert testimony because the trial court had admitted the toxicology reports of Neil and Fisher into evidence and allowed Nelson to cross-examine Fisher on her drug and alcohol consumption on that day. (Id.). The parties also stipulated that Fisher's blood alcohol level was over the legal limit for driving. Thus, the jury was able to weigh the evidence and testimony of the victims accordingly.

12

Thereafter, Petitioner argued in his Rule 29.15 motion that his trial counsel had been ineffective for failing to make a proper offer of proof regarding his proffered expert's testimony. (Doc. No. 16-10 at 18). The motion court found this claim without merit because Petitioner failed to show prejudice:

> Movant has failed to allege a right to relief as to his allegation that trial counsel was ineffective for failing to make a proper offer of proof to his proffered expert's testimony on the effects of drugs on the victim's ability to perceive events. Movant alleges that trial counsel should have allowed his expert witness the opportunity to speak with the victim regarding the alcohol in her system to be able to determine her general perception of the event on the day in question. Movant, however, fails to identify any authority that gives a defense expert the right to interview a victim in a criminal case. The Court knows of no such authority. The defendant has the right to depose the victim, and the record of the case reflects that trial counsel did depose the victim int his case. There is no right, however, to subject a victim in a criminal case to examination by a defense expert. The court had sustained a state's motion preventing Movant from calling an expert to testify on the effects drugs [sic] on a person's ability to perceive events. The Court properly sustained the state's motion because the expert did not personally examine the victim. Since there was no way to have the victim examined by a defense expert, trial counsel could not make an offer of proof in the way Movant now alleges he should have. Furthermore, the court allowed trial counsel to admit into evidence the toxicology reports of the victim, as well as cross-examine her as to her mind-altering substances that day. The parties also stipulated the victim's blood alcohol level was over the legal limit for driving. Thus, the jury was able to properly weigh the evidence and testimony of the victim as to the events surrounding the commission of the crime. Movant has failed to show that he suffered any prejudice and his claim is without merit.

(Id. at 82-83) (internal citations omitted). Nelson did not appeal the denial of post-conviction relief on this ground. (Doc. No. 16-15). Thus, this claim is procedurally defaulted. See Interiano v. Dormire, 471 F.3d 854, 856 (8th Cir. 2006) (An ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial of such a motion.).

Even if this ground was not procedurally defaulted, it fails on the merits since there was no factual basis in the record before the state court to support the admission of the proposed

expert's testimony. Counsel's failure to take an action that would have little chance of success does not constitute ineffective assistance of counsel. See Hale v. Lockhart, 903 F.2d 545, 549 (8th Cir. 1990); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994) (counsel is not ineffective for failing to make a meritless argument). Because this claim is procedurally defaulted and alternatively fails on the merits, Ground 2 is denied.

**Ground 3**

In Ground 3, Nelson alleges the trial court erred by overruling his objection to the State's use of a taped interview of his former girlfriend and alibi witness Roslain Smith to impeach her with a prior inconsistent statement. Nelson argues, based on Wardius v. Oregon, 412 U.S. 470 (1973), that the State had an obligation to disclose the interview to the defense before trial. In Wardius, the Supreme Court held that the Due Process Clause barred enforcement of a state notice-of-alibi rule that did not provide the defendant reciprocal discovery rights against the government. Id. at 472.

The Missouri Court of Appeals concluded that because the taped statements constituted impeachment on a matter other than Nelson's alibi, disclosure was not required. In its opinion, the appellate court explained:

> As a general rule, the rules of discovery do not require the prosecution to disclose the statements of defense witnesses. There are certain exceptions to this rule which are not pertinent here, such as when the statements directly pertain to the defendant's alibi. Missouri recognizes that, if a defendant gives notice of an alibi defense, Wardius requires reciprocal disclosure by the State of witnesses who will rebut the defendant's alibi. However, witness statements used for impeachment purposes that do not directly impact a defendant's alibi are not discoverable.
>
> Prior disclosure is not required of rebuttal evidence which simply impeaches a witness without directly impacting the alibi. None of the rebuttal questioning of Smith by the State … pertained to [Nelson's] whereabouts at the time of the murder. Rather, the questions were designed to impeach Smith's credibility by revealing a prior statement she made that was inconsistent with her present testimony describing [Nelson's] attire on [the night of the shooting]. Therefore,

14

the evidence was not subject to mandatory prior disclosure by the State to the defense and the objection was properly overruled by the trial court.

(Doc. No. 16-8 at 13) (internal citations omitted).

The Court finds the state court's decision did not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the Court will defer to the state court's decision. Ground 3 is denied.

**Grounds 4, 5, and 7**

Nelson's fourth, fifth, and seventh grounds for relief allege that his rights under the Confrontation Clause were violated by the trial court's admission of hearsay evidence. Specifically, he challenges the admission of Fisher and Telfair's statements that Neil identified Nelson when he came to the door on the night of the shooting (Ground 4); Fisher's statement that Neil and Nelson had had a conversation about a financial controversy (Ground 5); and Yokley's statement that he had heard Neil owed Nelson money for "something" (Ground 7). Nelson raised these grounds on direct appeal, and the Missouri Court of Appeals rejected them on the merits.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" In Crawford v. Washington, 541 U.S. 36, 68 (2004), the United States Supreme Court ruled that the Confrontation Clause requires the exclusion of all testimonial hearsay statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. The Confrontation Clause is not concerned with and does not bar non-testimonial hearsay. State v. Myers, 248 S.W.3d 19, 24 (Mo. Ct. App. 2008) (citing Davis v. Washington, 547 U.S. 813, 821-24 (2006); State v. Kemp, 212 S.W.3d 135, 149-50 (Mo. banc 2007)). Statements that are not made to law enforcement personnel or governmental agents are not testimonial in nature, and

Confrontation Clause protection does not extend to those situations. Id. (citing Kemp, 212 S.W.3d at 150).

Here, the appellate court determined that the statements from Fisher and Telfair recounting what they had heard Neil say after he opened the door to Nelson were non-testimonial and admissible under the excited utterance exception to the rule against hearsay. (Doc. No. 16-8 at 14). As for Fisher's testimony that Nelson had called Neil wanting money for a defective motor Neil provided him, the appellate court concluded that her statements were based on her first-hand knowledge of the events she described, not on Neil's statements recounting the events to her, and thus were not hearsay. (Id. at 16-17). Furthermore, the appellate court found that because Fisher was subjected to cross-examination by Nelson, he was not deprived of his right to confront her. (Id. at 17).

Regarding Yokley's testimony, the court determined that it was not offered for the truth of the matter asserted, i.e., that the source of the money dispute between Nelson and Neil was a car motor, and thus did not constitute hearsay. (Id. at 19-20). Moreover, the court noted that Fisher had already testified about the "money-owed" motive based on her first-hand personal knowledge and subject to cross-examination. Thus, Yokley's testimony about the source of the friction between Nelson and Neil was merely cumulative to evidence already before the trial court. Finally, the court found that Nelson was not prejudiced by the admission of Yokley's testimony, even if it was considered hearsay, because Nelson had the opportunity to cross-examine and confront Yokley about his statements. (Id. at 20).

Upon review of the record, the Court finds the state court's rulings with regard to these claims comport with Crawford and its progeny, and were neither contrary to, nor unreasonable applications of, clearly established federal law, and were not based upon unreasonable

determinations of fact.[1] <u>United States v. Brooks</u>, 645 F.3d 971, 977 (8th Cir. 2011); <u>see also</u> <u>Oberhart v. Steele</u>, No. 4:12-CV-2234 CEJ, 2014 WL 1920539, at *3 (E.D. Mo. May 14, 2014) (citing <u>Barrett v. Acevedo</u>, 169 F.3d 1155, 1163 (8th Cir. 1999) ("Because the statements at issue were either non-testimonial hearsay or simply not hearsay, their admission does not raise confrontation concerns."). Therefore, Grounds 4, 5, and 7 are denied.

**Ground 6**

In Ground 6, Nelson alleges the trial court erred by limiting his cross-examination of Fisher about the debt for the allegedly defective motor. Nelson raised this ground on direct appeal, and the Missouri Court of Appeals rejected it on the merits, finding Nelson had had a "meaningful opportunity" to cross-examine Fisher on the "defective motor money owed" motive, i.e., that Neil did not owe a direct debt to him, and that money which would have satisfied the debt was available for theft at the murder scene, but was not taken. (Doc. No. 16-8 at 17-19). Upon review of the transcript, the appellate court noted the trial court had intervened only when Fisher was asked to speculate or provide out-of-court statements made by another, all of which was inadmissible:

> Q. That day, [Appellant] never brought up the motor to [Neil], is that correct?
> A. I don't know.
> [Prosecutor]: Your Honor, I'll object. That calls for speculation.
> A. I wasn't there.
> THE COURT: Sustained....
> * * *
> Q (By [Defense counsel]) Did [Neil] ever mention anything about a motor being brought up by [Appellant]?
> [Prosecutor]: Well, You Honor, I'm going to object. This call for hearsay.
> THE COURT: Sustained.

---

[1] To the extent Nelson challenges the trial court's application of Missouri's hearsay rule, the Court notes that "federal habeas corpus relief does not lie for errors of state law" and "it is not within the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>See</u> <u>Estelle</u>, 502 U.S. at 67; <u>Hood v. Russell</u>, No. 4:11 CV 321 RWS, 2014 WL 1230071, at *1 (E.D. Mo. Mar. 25, 2014).

(Id. at 18-19). The appellate court further noted the trial court had applied the same standard on the State's direct examination of Fisher on the same subject when Nelson objected. (Id. at 19).

The scope of cross-examination is largely within the discretion of the trial court. State v. Oates, 12 S.W.3d 307, 313 (Mo. banc 2000). The Court finds the state court's decision did not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Ground 6 is denied.

**Grounds 8 and 9**

In Ground 8, Nelson contends there was insufficient evidence for the jury to find him guilty of first-degree burglary. In Ground 9, he contends his conviction for one of the counts of armed criminal action also lacked sufficient evidence of the underlying felony of first-degree burglary. Nelson unsuccessfully raised these grounds on direct appeal.

In the § 2254 setting, the Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Evans v. Luebbers, 371 F.3d 438, 441-42 (8th Cir. 2004) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[U]nder 28 U.S.C. § 2254 ... the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."). The Court also presumes that the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence, id. at 442 (citations omitted), which Nelson has not done.

Under Missouri law, a person commits the crime of burglary in the first degree if "he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable

18

structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime: (1) is armed with explosives or a deadly weapon; or (2) causes or threatens immediate physical injury to any person who is not a participant in the crime; or (3) there is present in the structure another person who is not a participant in the crime." Section 569.160 RS Mo. (2012).

Based on the evidence presented at trial, the Missouri Court of Appeals held that a jury could properly convict Nelson of first-degree burglary:

> [Nelson] maintains the evidence presented at trial that there was a knock at the back door, Neil said he would answer it, and then he opened the back door, suggests that "Neil opened the door and [Nelson] was invited inside," so he did not enter unlawfully. On the contrary, [Nelson] is assuming a scenario that the evidence does not support, and which is contrary to the jury's verdict. Fisher testified the next sounds she heard after Neil exited the bedroom to answer the door were gunshots and Neil exclaiming "No!" There was a bullet hole in the back door just above the door handle and a bullet inside the laundry room door across from the back door. There were shell casings in the grass just off the patio outside the back door, on the door mat outside the back door, and on the floor inside the back door. This evidence hardly suggests Neil invited [Nelson] inside and is contrary to the jury's finding that [Nelson] entered the home unlawfully, thereby supporting the burglary conviction. Inferences contrary to the jury's verdict must be disregarded. [State v. Grim, 854 S.W.2d 403, 405 (Mo. 1993)]. Likewise, because the burglary conviction stands, so does the ACA conviction because [Nelson] accomplished the burglary with the use of a deadly weapon, a handgun.

(Doc. No. 16-8 at 21-22).

Based on the evidence, and applying to it the State v. Grim standard (as did the Missouri Court of Appeals), the Court finds the appellate court's resolution of this issue was not contrary to, or an unreasonable application of, clearly established federal law. Grounds 8 and 9 are, therefore, denied.

**Ground 10**

In Ground 10, Nelson alleges his Fourth Amendment rights were violated by the unlawful seizure of his gun and clothing from Payne's home and the trial court's admission of those items into evidence. Nelson contends the police exceeded the "limited consent" Payne gave them to enter her home and that she did not consent to a search of her home.

Citing Stone v. Powell, 428 U.S. 456 (1970), Respondent argues that Fourth Amendment grounds are not cognizable in federal habeas corpus when a petitioner had the opportunity to litigate the claim in state court, and that here, Nelson argued on direct appeal that the trial court erred in overruling his motion to suppress this evidence. The appellate court rejected the claim, finding ample evidence in the record to support the trial court's finding that Payne's consent to search her house, both orally and in writing, was freely given and not limited in scope such that police officers searched beyond her permission. (Doc. No. 16-8 at 23).

In his traverse, Nelson asserts that Ground 10 is closely related to Ground 12, which alleges his trial counsel was ineffective for failing to raise a Fourth Amendment challenge to cell phone location records (CSLI) evidence. He argues that Stone only precludes federal habeas review where a defendant received a full and fair hearing on his Fourth Amendment claims before the state court, and that as a result of his trial counsel's ineffectiveness, he was denied such a hearing.

As discussed in greater detail below, the appellate court rejected this claim, concluding that even assuming the police conducted an unreasonable search in obtaining the CSLI, Nelson had failed to show that he suffered any prejudice because the acquired evidence was purged of the primary taint of any unlawful search through a lack of flagrant police misconduct and the presence of intervening circumstances. The Court finds the appellate court's resolution of this

issue was not contrary to, or an unreasonable application of, clearly established federal law. Ground 10 is denied.

**Ground 11**

In Ground 11, Nelson alleges the trial court erred in admitting the gun into evidence and allowing testimony about the gun because the State did not establish a chain-of-custody. The determination of whether the chain of custody has been properly established is within the discretion of the trial court. State v. Clay, 817 S.W.2d 565, 568 (Mo. Ct. App. 1991). It is not within the province of a federal habeas court to reexamine state-court determinations on state evidentiary issues. See 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68; Dowling, 493 U.S. 342.

Furthermore, the Missouri Court of Appeals considered this claim on direct appeal and rejected it on the merits. In disposing of this issue, the appellate court found the testimony of Corporal Yust, Detective Hurst and Detective Meyer, sufficiently tracked and established the chain of custody of the seized gun by those with knowledge of it, rendering it improbable the gun seized from Payne's house was exchanged with another or was contaminated or tampered with prior to the State's expert's testing of it. (Doc. No. 16-8 at 25).

The explanation given by the appellate court is entitled to deference and does not incorrectly or unreasonably apply federal constitutional law. Nelson is not entitled to relief on this ground because it concerns a non-cognizable issue of state evidentiary law. To the extent it even implicates due process, the state courts adjudicated it in a manner consistent with 28 U.S.C. § 2254(d). Ground 11 is, therefore, denied.

**B.  Grounds alleging ineffective assistance of counsel**

**Ground 12**

Nelson claims in his twelfth ground for relief that his trial counsel was ineffective for failing to argue that the seizure of his cell phone location records (CSLI) without a warrant to locate and arrest him violated the Fourth Amendment. Relying on Carpenter v. United States, 138 S. Ct. 2206 (2018), Nelson further argues his counsel was ineffective for failing to argue for suppression of evidence obtained as a result of his arrest under the Fourth Amendment. Had his counsel done so, the trial court would likely have suppressed the evidence obtained as a result of his arrest, including the gun found in Payne's home and the testimony of the ballistics expert, leaving only the victim's questionable identification. Thus, according to Nelson, there is reasonable likelihood that the outcome of his case would have been different and that he would have been found not guilty as charged.

Nelson unsuccessfully raised this claim in his state post-conviction relief proceedings. The motion court found his allegation that the police engaged in an unreasonable search was refuted by the record because the search fell under the exigent circumstances exception to the warrant requirement. The motion court noted that at the time the police sought the CSLI, Nelson had already been identified as the individual responsible for the shootings and that he posed an immediate threat to public safety because he was armed and still at large. The motion court concluded that under these circumstances, the police were not required to obtain a warrant before acquiring the CSLI. (Doc. No. 16-10 at 73).

Next, the motion court explained that, even if a warrant was required to obtain the CSLI, Nelson had suffered no prejudice because any evidence derivatively obtained from that warrantless search was purged of any primary taint. (Id. at 73-74). Specifically, the motion court found that the police grid search and Payne's subsequent consent to police entry into her home were intervening circumstances that rendered the acquisition of evidence from the home too

attenuated from the police's initial receipt of the CSLI. (Id. at 74). Therefore, the motion court

denied this claim on the merits.

In its decision affirming the motion court's denial, the Missouri Court of Appeals wrote:

The motion court's findings of fact and conclusions of law are not clearly erroneous. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. To that end, here, even if we assume without granting that the police conducted an unreasonable search in obtaining the CSLI, Movant failed to show that he suffered any prejudice because the acquired evidence was purged of the primary taint of any unlawful search through a lack of flagrant police misconduct and the presence of intervening circumstances.

First, the acquisition of the CSLI was not flagrant police misconduct ... Given the unsettled nature of the law in Missouri as to whether police are required to obtain a warrant supported by probable cause before obtaining CSLI, it is difficult to find fault with law enforcement here which would support a finding of flagrant police misconduct.

Second, significant intervening circumstances attenuated the relationship between the warrantless acquisition of the CSLI and the evidence that the police ultimately obtained. The record indicates that the CSLI did not provide the exact location of Movant's cell phone. Rather, it provided only the location of the last cell phone tower that Movant's phone had pinged, which occurred at 1:00 a.m. This information, therefore, provided only a general indication as to where Movant had been earlier that morning, and in order to actually locate Movant, the police were required to engage in further investigation by conducting a grid search within the identified area. Only after conducting this grid search did the police learn that Payne's home was near the tower pinged by Movant's phone. The police then traveled to Payne's home, and upon arrival, they asked Payne for her consent to speak with Movant and to search her home, which she granted. A warrantless search conducted with proper consent, voluntarily given, is constitutionally valid, and this is true even if the search is not otherwise supported by probable cause or a reasonable suspicion of criminal activity. Once Payne consented to the police's entry into her home, the police were in a position to locate Movant and obtain the evidence at issue. Thus, the police's ongoing investigation in the form of a grid search after obtaining the CSLI and Payne's consent to police entry into her home to conduct further investigation, both operated as attenuating, intervening circumstances which independently aided in the recovery of the evidence at issue.

A lack of flagrant police misconduct and the presence of intervening circumstances are factors showing that the obtained evidence was purged of the primary taint of any unlawful acquisition of the CSLI such that the evidence at issue would not have warranted exclusion at Movant's trial. Thus, since Movant

cannot establish that the result of the proceeding would have been different, he cannot establish that he suffered prejudice and is entitled to no relief.

As to Movant's assertion that, in seeking to suppress the CSLI itself, Trial Counsel should have argued that the police violated the Fourth Amendment and section 2703(c), this argument is also without merit. Movant admitted that Trial Counsel did seek to suppress the CSLI on the ground that it was not scientifically reliable. Nevertheless, he asserts that Trial Counsel was ineffective as he should have instead argued for suppression on the ground that the search violated Movant's constitutional and statutory rights. However, counsel has wide discretion in determining what strategy to use in defending his or her client, and presumptions exist that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. Thus, strategic choices generally are virtually unchallengeable and cannot serve as a basis for a claim of ineffective assistance. Here, Trial Counsel made a reasonable strategic decision to argue for suppression of the CSLI on the ground that it is scientifically unreliable instead of upon constitutional or statutory grounds, particularly where, as noted above, the law remains unsettled in this area. Since it is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another, Movant cannot establish that he is entitled to relief.

(Doc. No. 16-15 at 9-13) (internal citations and quotation marks omitted). The Court finds the state court's decision did not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In his amended motion, Nelson contends that Carpenter, 138 S. Ct. 2206, supports his claim. In Carpenter, the Supreme Court held that individuals have a reasonable expectation of privacy in CSLI, and so the Government generally needs a warrant supported by probable cause to obtain it. Carpenter, 138 S. Ct. at 2220-21. However, as the Eighth Circuit recently explained, prior to Carpenter, an individual had "no legitimate expectation of privacy in information he voluntarily turn[ed] over to third parties," regardless of whether he assumed the information would "be used only for a limited purpose." United States v. Reed, 978 F.3d 538, 541-42 (8th Cir. 2020) (quoting Smith v. Maryland, 442 U.S. 735, 743-44 (1979) and United States v. Miller, 425 U.S. 435, 443 (1976)). At the time the police sought the CSLI from Nelson's cell phone,

24

under <u>Smith</u> and <u>Miller</u>, "the Government [was] typically free to obtain such information from the recipient without triggering Fourth Amendment protections." <u>Id</u>. (quoting <u>Carpenter</u>, 138 S. Ct. at 2216). That changed with respect to CSLI after <u>Carpenter</u>'s holding "that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI." <u>Id</u>. (quoting <u>Carpenter</u>, 138 S. Ct. at 2217). In any event, Nelson's reliance on <u>Carpenter</u>, decided almost five years after this case, is unavailing. Ground 12 is denied.

**Ground 13**

In Ground 13, Nelson alleges his trial counsel was ineffective for failing to cross examine Anita Payne on the police obtaining consent to search her home "through deception and intimidation." In Missouri, claims of ineffective assistance of trial counsel must be brought through a Rule 29.15 motion for post-conviction relief. Mo. Sup. Ct. Rule 29.15(a). An ineffective assistance of counsel claim is procedurally defaulted if a petitioner fails to raise it in a Rule 29.15 motion or fails to raise it in the appeal from the denial of such a motion. <u>See</u> <u>Interiano v. Dormire</u>, 471 F.3d 854, 856 (8th Cir. 2006). Nelson acknowledges this claim is procedurally defaulted because it was not raised in his Rule 29.15 motion but asserts that cause for the default exists under <u>Martinez</u>, 132 S. Ct. 1309.

As noted above, in <u>Martinez</u>, the Supreme Court has recognized that a defaulted claim of ineffective assistance of trial counsel may be excused if the default was due to ineffective assistance of post-conviction relief counsel. 132 S. Ct. at 1320. To overcome his procedural default under <u>Martinez</u>, Nelson must show (1) that post-conviction counsel was ineffective under <u>Strickland</u>; and (2) "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some

25

merit." Id. at 1318. The second prong is evaluated by determining whether Nelson has made a substantial case under Strickland standards. See Dansby v. Hobbs, 766 F.3d 809, 834-36 (8th Cir. 2014). Thus, he must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." Strickland, 466 U.S. at 687.

Regarding the first Martinez prong, Nelson cannot establish that his post-conviction relief counsel was ineffective under Strickland for failing to include this ineffective assistance claim in the amended motion for post-conviction relief. Nelson's post-conviction relief counsel pursued a number of claims of ineffective assistance of counsel in the amended motion for post-conviction relief, including: (i) a claim based on trial counsel's failure to argue unreasonable search and seizure based on CSLI and for suppression of the evidence seized; (ii) a claim based on trial counsel's failure to investigate the possibility of hiring a certified firearms examiner to evaluate the findings of the state's expert; (iii) a claim based on trial counsel's failure to attend an interview an investigator for the prosecutor's office had with Nelson's alibi witness; (iv) a claim based on trial counsel's failure to fully investigate and interview Nelson's alibi witness; (v) a claim based on trial counsel's failure to call Nelson's expert witness John Cayton to testify; and (vi) a claim based on trial counsel's failure to make a proper offer of proof on Nelson's proffered expert's testimony regarding the effects of drugs on the victim's ability to perceive events. (Doc. No. 16-10 at 68-70).

It appears that post-conviction counsel determined that the claims presented were the most meritorious claims and the ones that could be supported with evidence, and Nelson offers no argument or evidence to overcome the presumption that counsel's decision to focus on these claims was a reasonable strategy. Moreover, as discussed below, the omitted ineffective assistance claim is without merit. Thus, Nelson's post-conviction counsel's decision not to

include this claim in the amended motion "falls within the wide range of reasonable professional assistance" under <u>Strickland's</u> deferential standards. <u>See</u> <u>Strickland</u>, 466 U.S. at 689.

Even assuming that post-conviction relief counsel was ineffective based on his failure to present this claim, a review of the record does not suggest that the underlying claim of ineffective assistance of trial counsel was a substantial one. The trial record indicates that counsel called Payne to testify at the suppression hearing and at trial. A party cannot generally cross-examine its own witness. Counsel adduced the details of Nelson's arrest from Payne on direct examination (Doc. No. 16-1 at 94-99, 808-20), and Nelson fails to identify what other questioning his counsel should have engaged in regarding Payne. For these reasons, Nelson's <u>Martinez</u> argument fails. Nelson has failed to show cause for the procedural default of Ground 13, and it is, therefore, denied.

**Ground 14**

In Ground 14, Nelson alleges his trial counsel was ineffective for failing to request an alibi instruction. Nelson acknowledges this claim is procedurally defaulted because it was not raised in his Rule 29.15 motion but, as with Ground 13, argues that cause for the default exists under <u>Martinez</u>. <u>Nelson</u> cannot establish either prong of the <u>Martinez</u> inquiry. As discussed above, his post-conviction relief counsel presented numerous other ineffective assistance claims in the amended motion for post-conviction relief, and the presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented. That is not the case here.

"[A]n alibi instruction will not be given unless there is supportive evidence that the defendant was somewhere other than the place of the crime during the entire time it was being committed." <u>Smith v. Bowersox</u>, No. 4:10CV446 JCH, 2010 WL 4272826, at *8 (E.D. Mo. Oct.

25, 2010) (quoting Reliford v. State, 186 S.W.3d 301, 304 (Mo. Ct. App. 2005)). To warrant an alibi instruction, the evidence must create a reasonable doubt as to the defendant's presence at the scene of the crime. Id. The trial record indicates that Nelson's alibi witness Roslain Smith testified he was home with her at 9:35 p.m. on the night of the shooting. (Doc. No. 16-1 at 829-40). During his closing argument, trial counsel reiterated Smith's testimony that Nelson was at her house at the time of the shooting. (Id. at 931-32). Given that Nelson's alibi defense was already before the jury via Smith's testimony and trial counsel's closing argument, it was reasonable for trial counsel not to seek an instruction on the same. Reasonable trial strategy is not subject to a claim for ineffective assistance of counsel. Vogel v. State, 31 S.W.3d 130, 136 (Mo. Ct. App. 2000).

Moreover, the jury was instructed that they must find Nelson guilty beyond a reasonable doubt. (Doc. No. 16-3 at 37-46). In order to find him guilty beyond a reasonable doubt, the jury necessarily had to find Nelson's alibi testimony unbelievable. See Shelton v. Dormire, No. 4:06CV1583 TCM, 2010 WL 816343 at *12 (E.D. Mo. Mar. 4, 2010) ("Although [Petitioner's alibi witnesses] testified that he could not have been the gunman because he was with them, the jury clearly did not believe them because they returned a verdict of guilty against Petitioner."). Nelson thus fails to demonstrate a reasonable probability that, had the jury received an alibi instruction, he would not have been convicted.

Because the underlying defaulted claim of ineffective assistance of trial counsel was not substantial, and because Nelson's post-conviction relief counsel was not deficient for failing to raise it, Nelson's Martinez argument fails. Ground 14 is, therefore, denied.

**Ground 15**

Nelson's fifteenth ground for relief alleges ineffective assistance of direct appeal counsel for failure to brief a claim that the trial court erred by permitting the State's firearms expert to testify that Nelson's gun was the weapon used in the shootings. This claim is procedurally defaulted based on Nelson's failure to properly present the claim to the motion court. See Interiano, 471 F.3d at 856-57. Nelson again argues that cause for the default exists under Martinez, because his post-conviction counsel was ineffective for failing to raise it; however, the Eighth Circuit has declined to extend Martinez to claims alleging ineffective assistance of counsel on direct appeal. See Dansby, 766 F.3d at 833.

In any event, the claim fails on its merits. Appellate counsel does not need to raise every nonfrivolous claim on appeal; counsel can choose among the claims to maximize the likelihood of success on appeal. Brown v. Wallace, No. 4:15CV01539 ERW, 2018 WL 5634009, at *10 (E.D. Mo. Oct. 31, 2018) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)). A petitioner needs to show the ignored issues were clearly stronger than those presented to establish counsel was ineffective. Id. To establish the prejudice prong of Strickland, a petitioner must demonstrate a reasonable probability the claim would have succeeded on appeal. Id. (citing Smith, 528 U.S. at 285). Nelson cannot establish either of these. He did not demonstrate that his issue regarding the State's expert's testimony was clearly stronger than the issues presented by his appellate counsel, nor did he demonstrate a reasonable probability the claim would have succeeded on appeal. The Court defers to the appellate court's findings as to the admissibility of the expert testimony. Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."). The state courts' decisions are entitled to deference and Ground 15 is, therefore, denied.

**Ground 16**

Lastly, Nelson alleges trial counsel was ineffective for advising his alibi witness, Roslain Smith, to speak with a prosecution investigator without counsel present; failing to prepare her for cross examination; and failing to present evidence that she had come forward as an alibi witness shortly after counsel was assigned to the case, and had not waited for a year and a half, as the State argued. Nelson acknowledges this claim is procedurally defaulted because it was not raised in his Rule 29.15 motion, but relies on Martinez to cure his default.

As with Grounds 13 and 14, Nelson cannot establish either prong of the Martinez inquiry. As discussed above, his post-conviction relief counsel presented numerous other ineffective assistance claims, and the presumption of effective assistance of counsel can generally only be overcome when the ignored issues are clearly stronger than those presented. That is not the case here. Even if Nelson could prove this claim, it does not undermine the credibility of the proceedings and, considering all the evidence, does not suggest the result would have been different. Smith herself testified she did not come forward and tell anyone, including Nelson's attorney, about her alleged alibi for a year and a half after the murder, despite the fact that she knew Nelson was in jail for the murder during that period of time and lived with him at the time of the crime. (Doc. No. 16-1 at 855-860). See, e.g., Freeman v. Graves, 317 F.3d 898, 901 (8th Cir. 2003) ("[T]he testimony of alibi witnesses, especially friends and relatives of the defendant, does not assure an acquittal and is sometimes counterproductive.").

Because the underlying defaulted claim of ineffective assistance of trial counsel was not substantial, and because Nelson's post-conviction relief counsel was not deficient for failing to raise it, Nelson's Martinez argument fails. Nelson has failed to show cause for the procedural default of Ground 16, and it is, therefore, denied.

**VI.    Conclusion**

30

For these reasons, Nelson has not shown an entitlement to habeas relief on any of the grounds asserted in his petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Patrick Nelson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [1, 17] is **DENIED.**

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

A separate judgment will accompany this Memorandum and Order.

Dated this 13th day of April, 2021.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

31